1
2
3
4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    IN RE TOYOTA RAV4 HYBRID FUEL          Case No.  20-cv-00337-EMC
     TANK LITIGATION.
8
9                                            **AMENDED ORDER GRANTING IN
                                             PART AND DENYING IN PART
10                                           DEFENDANT'S MOTION TO DISMISS
                                             FIRST AMENDED COMPLAINT**
11                                           Docket No. 110
12
13

14          This putative consumer class action is brought by thirty-nine plaintiffs ("Plaintiffs") from

15   twenty-nine states on behalf of a nationwide class of "of purchasers and lessees of 2019 Toyota

16   RAV4 Hybrid vehicles, 2020 Toyota RAV4 Hybrid vehicles, 2021 Toyota RAV4 Hybrid vehicles,

17   and 2021 Toyota RAV4 Prime vehicles" (the "Vehicles").  *See* Docket No. 103 ("First Amended

18   Complaint" or "FAC") at 1–2.  Plaintiffs allege that Defendant Toyota Motor Sales, U.S.A., Inc.

19   ("Toyota" or "TMS") falsely represented in marketing and ownership materials that the Vehicles'

20   fuel tank capacity is 14.5 gallons when it is actually 8–11 gallons, thus significantly reducing the

21   Vehicles' mileage range on a single tank of gas.  Plaintiffs bring ninety-four state-law claims

22   against Toyota for breach of express warranty, breach of the implied warranty of merchantability,

23   violations of various consumer protection and unfair competition statutes, and unjust enrichment.

24   Plaintiffs seek damages as well as injunctive and declaratory relief.

25          Pending before the Court is Toyota's motion to dismiss Plaintiffs' First Amended

26   Complaint on the grounds that they re-allege previously dismissed claims and fail to state claims

27   for relief under Rule 12(b)(6).  For the reasons given below, Toyota's motion to dismiss is

28   **GRANTED in part and DENIED in part.**

United States District Court
Northern District of California

# I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

A detailed factual background of this case can be found in the Court's prior order ("MTD Order") granting in part and denying in part Toyota's motion to dismiss the consolidated class action complaint ("Complaint").  Docket No. 100 at 2–5.  For the purposes of this motion, the following additional facts are relevant.  Plaintiffs allege that,

> "According to hundreds of complaints filed with the National Highway Traffic Safety Administration ["NHTSA"] (beginning as early as June 24, 2019), reports to Toyota's Customer Experience Center (as early as April 19, 2019), reports by technicians at Toyota's dealerships that contacted Technical Service and Field Technical Specialists for advice (as early as May 24, 2019), a June 6, 2019 report by a Toyota Vice President, and Toyota's own technical bulletins, the RAV4 Hybrid's fuel tank could only fill to between 8-11 gallons—significantly less than the advertised 14.5-gallon capacity."

Docket No. 116 ("Opp.") at 3 (citing FAC ¶¶ 71–114).  This defect resulted in a reduced mileage range of 330–470 miles, which is much less than the estimated 580-mileage range.  *Id.* ¶ 73.

Plaintiffs also allege that Toyota attempted to but seemingly failed to fix the problem by replacing the RAV4 Hybrid's fuel tank.  FAC ¶ 107.  Beginning in late May and early June 2020, Toyota began notifying dealers and customers that it was working on a repair for the RAV4's defective fuel tanks.  *Id.* ¶¶ 109–10.  Then, in late October 2020, Toyota launched its Customer Support Program ("CSP") and began notifying owners and lessees that a "repair" was available. *Id.* ¶ 112.  It explained that it has "received customer reports of certain 2019-2020 model year RAV4 HV vehicle fuel gauges displaying less than full and/or total fuel dispensed is less than expected, when the fuel nozzle automatically clicks off when refueling" as well as reports that have noted "the 'Distance to Empty' shown on the multi-information display is less than expected."  Docket No. 110-2 ("Landis Decl.") at 234.  It further explained that based on its investigation it "believes these conditions to be primarily related to a variation of fuel tank shape and the potential for the fuel sender gauge to become inclined.  These conditions can cause the fuel level to be read incorrectly and may cause the low fuel light to illuminate with more fuel in the tank than usual."  *Id.*  Under the CSP, a vehicle with the verified condition—*i.e.*, the alleged fuel tank defect—would be repaired with a new fuel tank and fuel sender gauge, free of charge.

United States District Court
Northern District of California

2

*Id.* at 227.  According to the Plaintiffs, however, the "repair" is insufficient because Toyota's CSP notices state that, "If the refueling amount is less than 9.8 gallons, the condition [*i.e.*, the alleged defect] may be present.  If the refueling amount is 9.8 gallons or more, the vehicle's condition is normal."  *Id.* ¶ 113.  But according to the RAV4's user manual, when the vehicles low fuel light illuminates, 2.2 gallons or less remain in the tank.  *Id.* ¶ 114.  Therefore, Plaintiffs assert that the CSP repair does not work because "Toyota's CSP program only applies to RAV4s that will accept 12 gallons or less, despite the fact that Toyota advertises the tank has 14.5 gallon capacity.  Toyota's CSP program offers no remedy for RAV4s that accept between 12 to 14.5 gallons of fuel."  *Id.*

Plaintiffs filed a class action complaint on January 15, 2020.  Docket No. 1.  After several cases were related to and consolidated with the instant case, Plaintiffs filed their 198-page consolidated class action complaint on September 14, 2020.  *See* Docket No. 55 ("Compl.").  Toyota's motion to dismiss followed on October 14, 2020.  *See* Docket No. 66-1.  On April 9, 2021, the Court issued an order granting in part and denying in part Toyota's motion to dismiss.  Docket No. 96.  Then on April 16, 2021, the Court issued an amended order.  MTD Order.  Plaintiffs filed their 234-page first amended complaint ("FAC") on June 9, 2021.  Docket No. 103.  On August 6, 2021, Toyota filed the present motion to dismiss the FAC.  Docket No. 110 ("Mot.").  The motion hearing ("Hearing") took place on October 28, 2021.

## II.  <u>LEGAL STANDARD</u>

A.    <u>Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] must . . . suggest that the claim has at least a plausible chance of success."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal

1   quotation marks omitted).  The court "accept[s] factual allegations in the complaint as true and

2   construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

3   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

4   complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

5   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

6   effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

7   2011)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

8   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

9   *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it

10  asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

11  *Twombly*, 550 U.S. at 556).

12  B.    Rule 9(b)

13        Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

14  Federal Rule of Civil Procedure 9(b), which requires that a plaintiff bringing such a claim "state

15  with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To clear

16  the heightened standard of Rule 9(b), a plaintiff must identify the "who, what, when, where, and

17  how" of the alleged misconduct and explain how the statement or omission complained of was

18  false or misleading.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see*

19  *also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that nondisclosure

20  claims sound in fraud and are subject to Rule 9(b)).  The purpose of Rule 9(b) is to require that a

21  plaintiff's allegations be "specific enough to give defendants notice of the particular misconduct

22  which is alleged . . . so that they can defend against the charge and not just deny that they have

23  done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rule 9(b)

24  allows, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may

25  be alleged generally."  Fed. R. Civ. P. 9(b).  Notably, "a fraud by omission claim can succeed

26  without the same level of specificity required by a normal fraud claim" since plaintiffs in such

27  cases "will not be able to specify the time, place, and specific content of an omission as precisely

28  as would a plaintiff" in an affirmative misrepresentation case.  *Falk v. Gen. Motors Corp.*, 496 F.

United States District Court
Northern District of California

4

Supp. 2d 1088, 1098–99 (N.D. Cal. 2007); *see also Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799–800 (N.D. Cal. 2019) (applying the pleading standard of Rule 8 to an omission-based consumer protection claim).

C.   Leave to Amend

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

D.   Judicial Notice

Under Federal Rule of Evidence 201, a court "may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Courts generally "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," but a defendant "may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1002 (9th Cir. 2018).

## III.   DISCUSSION

Toyota's motion to dismiss is divided into six main parts.  First, Toyota argues that Plaintiffs' re-alleged claim that had been dismissed without leave to amend by the MTD Order should be dismissed once again.  Mot. at 8–9.  Second, new express warranty claims based on the New Vehicle Limited Warranty ("NVLW") fail for the same reasons the prior NVLW express warranty claims were dismissed without leave to amend in the MTD Order.  *Id.* at 9–11.  Third, certain Plaintiffs' express warranty claims based on Toyota's marketing and information materials fail because they do not contain statements by Toyota related to fuel tank capacity.  *Id.* at 11–13.  Fourth, Plaintiffs' claims based on active concealment fail because they are unsupported by the factual allegations.  *Id.* at 15–17.  Fifth, certain Plaintiffs' consumer protection claims for additional reasons.  *Id.* at 18–29.  And sixth, Plaintiffs fail to allege injury entitling them to relief because nearly all of the Plaintiffs did not participate in Toyota's remedy program, the Customer

United States District Court
Northern District of California

United States District Court
Northern District of California

Support Program ("CSP").  *Id.* at 29–30.  The Court addresses each of these arguments in turn.[1]

A.      Re-Allegation of Dismissed Claims

First, the parties dispute whether it is appropriate for Plaintiffs to reassert the same claims in the FAC that the Court had dismissed without leave to amend:  the breach of express warranty claims based on the NVLW, breach of implied warranty of merchantability claims, unjust enrichment claims on behalf of non-California plaintiffs, and claims for violation of the Ohio Deceptive Trade Practices Act, Nebraska Consumer Protection Act, and Oklahoma Consumer Protection Act.  *See* MTD Order at 50, 60, 71–72.  Although Plaintiffs do not seek reconsideration of the Court's dismissal of these claims,[2] they re-allege these claims to preserve them for appeal. Docket No. 116 ("Opp.") at 5.

Plaintiffs' re-alleging previously dismissed claims is unnecessary.  The Ninth Circuit has held that "[f]or claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.  But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled."   *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).  Plaintiffs explain that they re-allege the dismissed claims "in an abundance of caution" because the MTD Order dismissed the claims "without leave to amend" but did not expressly dismiss them "without prejudice." Opp. at 6.  But

---

[1] Toyota also filed a request for judicial notice along with its motion to dismiss.  *See* Docket No. 110-4 ("RJN").  Toyota asks the Court to take notice of Exhibits 1–3, which are representative copies of the 2019 RAV4 Hybrid Warranty & Maintenance Guide, 2021 RAV4 Hybrid Warranty & Maintenance Guide, and 2021 RAV4 Prime Warranty & Maintenance Guide.  *Id.*  It also requests the Court to take notice of Exhibit 4, which consists of documents related to the CSP implemented by Toyota to address the alleged fuel tank defect.  *See* Docket No. 110 at 212–84. Plaintiffs do not oppose the first three exhibits, but they oppose the fourth.  Docket No. 115 ("RJN Opp.").  Because the complaint extensively refers to the CSP and Plaintiffs' claims rely on the contents of the documents, *e.g.*, the efficacy of the CSP, and because the authenticity of the documents is not disputed, Toyota's request is **GRANTED**.  *See* FAC ¶¶ 14, 20, 108–14; Docket No. 118-1 ("RJN Reply") at 3; *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006).

[2] Plaintiffs do not oppose dismissal so long as the Court will later consider a motion to amend their New Vehicle Limited Warranty ("NVLW") express warranty claims based on the outcome of discovery.  Opp. at 6.  As the MTD Order explains, "if discovery produces something that sheds a different light on the fuel tank defect, then [the Court] would entertain a motion to amend Plaintiffs' express warranty claims pursuant to Federal Rule of Civil Procedure 15(a)."  MTD Order at 16.

as Toyota points out, this is a "distinction without difference" and under *Lacey*, only claims that are "voluntarily dismissed" will be waived if not repled.[3]  Docket No. 118 ("Reply") at 3 n.2.

Toyota's motion to dismiss these claims without leave to amend is **GRANTED**.

B.   Perry, Mulcahy, Kafeyan, and Gentile's NVLW Express Warranty and Implied Warranty Claims

Plaintiffs re-allege similar NVLW express warranty and implied warranty claims that the Court had dismissed without leave to amend for its new plaintiffs, Perry, Mulcahy, Kafeyan, and Gentile.  *See* FAC ¶¶ 186–96, 1113–23.  Toyota contends that Plaintiffs have not asserted any new allegations even after nearly a year of substantive discovery and therefore their claims should be dismissed with prejudice.  Reply at 4.  Again, Plaintiffs do not seek reconsideration of the Court's dismissal, but they assert that a dismissal "with prejudice" at this stage is inappropriate because they intend to seek further amendment under Rule 15(a) at the appropriate time.  Opp. at 7.  They argue that through the ongoing discovery, they have "obtained information corroborating their view that the RAV4 suffers from a manufacturing defect covered by the NVLW (or at a minimum, a combined manufacturing and design defect)."  *Id.*  For the reasons previously stated, Toyota's motion to dismiss these claims is **GRANTED** without leave to amend at this time.[4]

_____

[3] Plaintiffs' reliance on *Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2021 WL 411366 (N.D. Cal. Feb. 4, 2021) in support of its argument is misplaced.  In *Stemmelin*, the court had initially dismissed the plaintiff's complaint with leave to amend.  *Stemmelin*, 2020 WL 6544456, at *5.  When plaintiff re-alleged his multistate claims "so as not to waive them for appeal" "because the prior order did not expressly dismiss the claims with prejudice," the court found this to be a "fair point."  *Id.* at *2.  It then clarified that the plaintiff's claims that did not arise out of Illinois law "were and are dismissed with prejudice as to plaintiff himself and are preserved for appeal."  *Id.*  In contrast, the Court in this case clearly explained which claims were dismissed without leave to amend.

[4] Plaintiffs assert that because they do not oppose dismissal of these claims, the Court does not need to resolve Toyota's fallback arguments:  (1) "that Mulcahy, Kafeyan, and Gentile's express warranty claims also fail because they did not present their cars for repair"; and (2) "that Perry, Mulcahy, Kafeyan, and Gentile's implied warranty claims also fail because they lack privity with Toyota."  Opp. at 7.  But to avoid waiver, they argue that they are excused from presenting their Vehicles to Toyota because doing so would be futile and that Gentile and Kafeyan reported their fuel tank problems to their Toyota dealerships.  *Id.*  The Court has, however, rejected Plaintiffs' futility arguments and held that their "allegations likely fail to plead futility given the high bar that this requirement establishes."  MTD Order at 16 n.9.  Plaintiffs also assert that "there is no privity requirement for the Song-Beverly Consumer Warranty Act claim (Count 8), they satisfy California's third-party beneficiary privity exception for the U.C.C.-based claim (Count 7)," and "that Rhode Island no longer requires privity."  Opp. at 8.  For the reasons stated, the Court need

C.    Klinkhammer, Colabraro, Birchfield, McPhie, Ramaeker, and Wagner's Express Warranty Claims

The parties dispute whether Klinkhammer, Colabraro, Birchfield, and McPhie sufficiently plead express warranty claims premised on statements in Toyota's marketing and informational material.  Plaintiffs concede that Wagner and Ramaeker's express warranty claims are not sufficiently pleaded and do not object to the dismissal of these claims.  Opp. at 10.

To bring "express warranty claims founded on statements in marketing materials and elsewhere outside an express written warranty (*e.g.*, the NVLW) [Plaintiffs] must allege that they at least heard, read, or were otherwise aware of the statements."  MTD Order at 20.  The Court found that the original "complaint contains only the boilerplate assertion that 'Plaintiffs believed and relied on statements made by Toyota regarding the RAV4's fuel tank capacity'" and held that "[i]n the absence of more detailed allegations concerning Plaintiffs' awareness of the statements made in the Vehicles' marketing materials and owner's manuals, Plaintiffs express warranty claims based on such statements cannot proceed."  *Id.* at 20–21.

As a result, Birchfield and McPhie now allege that they "relied on and [were] aware of RAV4's mileage range and MPG ratings" based on the Monroney Sticker on a Vehicle at a dealership.  FAC ¶¶ 21, 27.  McPhie adds that while on a Toyota dealer's website, he "saw and relied upon Toyota's representations that the RAV4's mileage estimate was 41 MPG for city driving and 38 MPG for highway driving."  *Id.* ¶ 27.  McPhie does not allege he saw any representation regarding fuel tank size.  Toyota contends that these statements are insufficient because they do not relate to the Vehicle's fuel tank capacity but instead relate to its mileage range and MPG ratings.

Reliance on representations about mileage range is sufficient to state a claim here because Plaintiff could infer from stated mileage range and MPG ratings the fuel tank capacity (*i.e.*, by dividing the mileage range with the average MPG rating).  But Birchfield and McPhie do not allege with specificity where they saw or heard about the mileage range.  Instead, they only allege

not address these issues.

United States District Court
Northern District of California

facts about the MPG rating, which alone is not enough to suggest a representation about the Vehicle's fuel tank capacity.  Plaintiffs admitted during the Hearing that the Monroney sticker only depicts the MPG rating and not the mileage range; as a result, contrary to Birchfield and McPhie's allegations, they could not have been aware of the Vehicle's mileage range based on the Monroney Sticker.  Birchfield and McPhie's express warranty claims are therefore insufficient.

As for Klinkhammer and Colabraro, Toyota contends that they do not plead any specific allegations of being aware of representations directly from Toyota.  Mot. at 12.  Klinkhammer alleges that he "believed and relied upon representations on certain Internet websites, including reviews and videos on Youtube, Kelley Blue Book, and other car websites with reviews about the RAV4 vehicles" and that the representations he "saw" "stat[ed] that the RAV4's fuel tank capacity was 14.5 gallons."  FAC ¶ 22.  Similarly, Colabraro alleges that he "believed and relied upon representations on YouTube by individuals independently reviewing the RAV4 vehicle" that the "Rav4's fuel tank capacity was 14.5 gallons, that the RAV4's mileage estimate was 41 MPG for city driving and 38 MPG for highway driving, for a combined 40 MPG rating, and that therefore the RAV4 had a mileage range of approximately 580 miles."  *Id.* ¶ 29.  Colabraro also alleges that he "saw and relied on similar representations on his paperwork" at the dealership.  *Id.*  Both claim that they are "informed and believe[]" that the representations were "based on information published or otherwise provided by Toyota."  *Id.* ¶¶ 22, 29.

Toyota contends that such claims are insufficient because Plaintiffs "must allege that a promise regarding the Vehicles' fuel tank's capacity was made to them by Toyota, not by people on YouTube or other third-parties on unaffiliated Internet websites."  Mot. at 12.  Plaintiffs respond that because the source of information for car review websites and YouTube stems from Toyota's own fuel tank representations, Klinkhammer and Colabraro's express warranty claims are sufficient.  Opp. at 9.

Plaintiffs are correct.  Under New Jersey and Minnesota state laws, "[o]ne who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type

9

of transaction in which he intends or has *reason to expect their conduct to be influenced*." Restatement (Second) of Torts § 531 (emphasis added).  Thus, for instance, in *Vikse v. Flaby*, 316 N.W.2d 276, 283–84 (Minn. 1982), the court held that the appellants were liable even though there was no direct contact between the respondents and appellants because "in making the representations to [an independent contractor]" the appellants "knew and intended that [the independent contractor] would be passing on his information to potential investors.").  Similarly, in *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 101 (2000) ("Indirect reliance has also been adopted by the Restatement (Second) of Torts for situations involving reliance by party B on a false representation initially made to party A who the maker knew or had reason to expect would communicate the information to party B such that the information would influence party B's conduct in a transaction."  Notably, these cases are in accord with those in other states.

Plaintiffs also rely on similar cases as California law.  For instance, in *Sotelo v. Rawlings Sporting Goods Co., Inc.*, 2019 WL 4392528 (C.D. Cal. May 8, 2019), the court held that the plaintiff had sufficiently alleged actual reliance on the defendant's misrepresentations based on statements from a third-party website because the plaintiff had "specifically allege[d] in the FAC that the displayed information was provided to the online retailer by [the defendant]."  *Sotelo*, 2019 WL 4392528, at *14–*15.  *Cf. Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 975 (N.D. Cal. 2018) (in the absence of an allegation that a statement on Best Buy's website was attributable to the defendant, "no claim against [the defendant] is stated.").

In this case, there is no dispute that car review websites such as Kelley Blue Book publish information directly from manufacturers like Toyota and therefore Klinkhammer's claim prevails. Opp. at 9 n.5; *see What are Kelley Blue Book Values?*, KELLEY BLUE BOOK (March 7, 2019), https://www.kbb.com/car-advice/what-are-kelley-blue-book-values/ (Kelley Blue Book "begin[s] with the basic new vehicle information from the manufacturer" to establish car valuations). Colabraro specifically alleges that the information from the third parties on YouTube were "based on information published or otherwise provided by Toyota."  *Id.* ¶ 29.

It is therefore plausible that Toyota, by making the allegedly false representations on its website and/or marketing materials, intended or had reason to expect that third parties would

1      disseminate that information and reach consumers such as Colabraro.  Moreover, Colabraro also

2      alleges that he "saw and relied on similar representations on his paperwork" at his Toyota

3      dealership, although it is unclear whether the representations related to only the MPG ratings or

4      also included the fuel tank capacity.  *Id.* ¶ 29.

5            Accordingly, the Court **GRANTS** Toyota's motion to dismiss Wagner, Ramaeker,

6      Birchfield, and McPhie's express warranty claims without leave to amend.  Toyota's motion to

7      dismiss Klinkhammer and Colabraro's claims, however, is **DENIED**.

8      D.      Active Concealment Theory

9            Toyota contends that Plaintiffs' consumer protection claims based on active concealment

10     are unsupported and should be dismissed with prejudice.  Mot. at 15.  In the MTD Order, the

11     Court dismissed Plaintiffs' omission-based consumer protection claims insofar as they require a

12     showing of active concealment.  MTD Order at 34.  It had found that "While the complaint repeats

13     the language of each state's consumer protection statute in stating, for example, that Toyota

14     'engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud,

15     misrepresentations, or concealment, [or] suppression or omission of any material fact with intent

16     that others rely upon such concealment,' Compl. ¶ 98, it fails to allege facts that would plausibly

17     support such boilerplate assertions."  *Id.* at 33–34.

18           The FAC alleges that Toyota knew about the fuel tank defect from at least as early as April

19     19, 2019 (*i.e.*, before any of the Plaintiffs purchased their vehicles) and failed to warn purchasers

20     and lessees.  FAC ¶¶ 96–98; *see also* FAC ¶ 304 ("Toyota knew about the RAV4's fuel tank

21     capacity and mileage range at the time of sale and lease" and "acquired additional information

22     concerning the RAV4's fuel tank capacity and mileage range after the RAV4s were sold and

23     leased, but continued to conceal information until the defect was revealed by RAV4 purchasers

24     and lessees.").

25           However, the FAC also alleges that by July 2019, Toyota began to inform customers that

26     the fuel tank concern was being investigated.  FAC ¶ 99.  According to Toyota, Plaintiffs fail to

27     adequately allege active concealment.  Mot. at 16.  The FAC alleges that "soon after TMS

28     received customer reports of certain 2019 and 2020 RAV4 Hybrid vehicle fuel gauges displaying

United States District Court
Northern District of California

11

1   less than full and/or the total fuel dispensed is less than expected when the fuel nozzle

2   automatically clicks off, Toyota began investigating the issue and informing customers and Toyota

3   service providers of that investigation."  *Id.* at 16–17 (citing FAC ¶¶ 99, 100, 103, 106, 107).

4       In its opposition to the current motion to dismiss, Plaintiffs assert a new theory of active

5   concealment:  that Toyota misrepresented the efficacy of the CSP and gave the false impression to

6   RAV4 purchasers and lessees that the "fix" worked because the "fix" left them unable to fill their

7   fuel tanks up to the advertised 14.5-gallon capacity or achieve the expected 580-mile range.  Opp.

8   at 29.  Plaintiffs cite to a line of cases where the court upheld active concealment claims because

9   the defendant had implemented a "fix" that it knew was not effective.  *Id.*

10       For example, in *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), the

11   court found that plaintiffs had provided sufficient facts to support their active concealment claim

12   where the defendant, General Motors ("GM"), "replaced the Trucks' speedometers pursuant to

13   warranty provisions" and "utilized equally defective speedometers and speedometer mechanisms

14   such that the defect was not corrected even though GM informed consumers that it was."  *Falk*,

15   496 F. Supp. at 1095.  The claim suggested that "GM tried to gloss over the problems with its

16   speedometers by replacing broken ones with the exact same model of speedometer, thereby giving

17   the impression that any defects were unique cases."  *Id.*  Similarly in *In re MyFord Touch*

18   *Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014), this Court held that the plaintiffs had

19   adequately alleged active concealment where, "[i]f, as Plaintiffs allege, Ford pretended to fix the

20   problems with [the alleged defect] instead of actually admitting that the problems could not be

21   fixed."  *MyFord Touch*, 46 F. Supp. at 962.  And in *Goldstein v. Gen. Motors LLC*, 517 F. Supp.

22   3d 1076 (S.D. Cal. 2021), the plaintiffs adequately pleaded active concealment where they alleged

23   that the defendant implemented "a practice of 'replacing a defective part with an equally defective

24   part.'"  *Goldstein*, 517 F. Supp. at 1091.

25       Relying on these cases, Plaintiffs assert that Toyota actively concealed the alleged fuel

26   tank capacity defect because "the purchasers and lessees were incapable of receiving a defect-free

27   RAV4 that will accept the advertised 14.5 gallons."  Opp. at 30.  In October 2020, Toyota

28   launched the repair portion of the CSP, where a vehicle with the verified condition—*i.e.*, the

United States District Court
Northern District of California

United States District Court
Northern District of California

alleged fuel defect—would be repaired with a new fuel tank and fuel sender gauge, free of charge. Landis Decl. at 227. According to Plaintiffs, the CSP, Toyota's attempted remedy, is ineffective because Toyota does not explain what is different about the new fuel tank and it does not guarantee that the replacements will work. Opp. at 4. Toyota argues that Plaintiffs do not sufficiently allege active concealment because there are no allegations that Toyota lied about resolving the alleged defect or took affirmative steps to conceal the alleged defect. In its CSP notice to customers, Toyota explains that if the RAV4 accepts at least 9.8 gallons of fuel when the low fuel light is on, then their "vehicle's condition is normal." *Id.* ¶ 113. Plaintiffs allege that because the low-level fuel light turns on when 2.2 gallons remain the tank, Toyota in effect represented that the vehicle's condition is "normal" even though the RAV4 can only refill to 12 gallons, *i.e.*, 2.5 gallons less than the advertised 14.5-gallon capacity. A screenshot of the CSP notice contained the following:



**Q5:** *How should my fuel tank operate during normal refueling?*

**A5:** The image below provides a visualization of the normal amount of fuel that is dispensed during refueling when the low fuel light is on until the auto-stop activates in the fuel pump nozzle. Note that the refueling amount is less than the total tank capacity of 14.5 gallons listed in the Owner's Manual.

Like other Toyota vehicles, 2019-2020 RAV4 HV vehicles are designed to have a reserve of fuel remaining when the low fuel light comes on. This reserve is to reduce the risk of customers unexpectedly running out of fuel. Additionally, the fuel system is designed to prevent fuel "splash back" during refueling after auto-stop of the fuel pump nozzle. This, including other factors (fuel volume being dispensed, temperature, differences in fuel pump nozzles from gas station to gas station) may affect the total gallons dispensed during refueling. It is also important to note that the displayed "Distance to Empty" is an estimate based on a number of factors including historical driving behavior, road conditions, weather conditions, etc.

(\*) The refueling amount from low fuel light to auto-stop depends on a number of factors including normal fuel tank production variation, temperature, gas station pump variations, distance travelled since low fuel light illumination and other factors.

13

*See* Landis Decl. at 235, 242, 256, 263, 276, 282.

Plaintiffs assert that two plaintiffs, Perry and Tran, and thirty other class members attested under oath that the fix did not work because their tanks did not achieve the 14.5 gallons.[5]  *Id.* ¶¶ 9, 14, 21; *see also Pulrabek v. Toyota Motor Sales, USA, Inc.*, No. 20-CV-00036, Docket No. 85-3–85-32 (E.D. Tex.) (a related case).  Plaintiffs therefore assert that they adequately plead active concealment.

Toyota, however, did not lie about the efficacy of the remedy.  The CSP notice indicates that "normal" refueling capacity is 12 gallons.  *See also infra* Part III.G.  Specifically, the CSP states that "the refueling amount is less than the total tank capacity of 14.5 gallons listed in the Owner's Manual."  *See, e.g.*, Landis Decl. at 235.  It explains that the "refueling amount from low fuel light [*i.e.*, 2.2 gallons remaining the tank] to autostop [from the fuel pump nozzle] depends on a number of factors including normal fuel tank production variation, temperature, gas station pump variations, distance travelled since low level light illumination and other factors."  *Id.*  Toyota did not claim the CSP delivered a useable fuel tank capacity of 14.5 gallons.[6]

Because Toyota did not make a representation about the efficacy of the CSP, any amendment regarding active concealment would be futile and therefore Toyota's motion to dismiss Plaintiffs' claims based on active concealment is **GRANTED** without leave to amend.

E.    Plaintiffs' Additional Consumer Protection Claims

    1.    Kahn and Ferraguto's Chapter 93A Claim Under Massachusetts Law (Count 31)

Toyota asserts that Kahn and Ferraguto fail to plead the necessary elements to allege a Chapter 93A claim under Massachusetts law, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ch. 93A § 2.  In the FAC, Kahn and Ferraguto allege that Toyota's "unfair or deceptive acts" are the following:

---

[5] Toyota initially asserted that there were three Plaintiffs who had participated in the CSP, Perry, Tran, and Birchfield.  Mot. at 30.  But it clarified during the Hearing that Birchfield did not participate in the CSP because he received a replacement tank in January 2020, four to five months before the implementation of the CSP.  FAC ¶ 21.

[6] *See* FAC ¶ 14 (Tran's vehicle initially accepted 11 gallons with a mileage range of 450 miles and after the replacement it accepted 13 gallons when the tank was "nearly empty," and the mileage range was 450–460 miles).

1

2

3

4

5

6

7

8

9

> "In the course of its business, Toyota concealed and suppressed material facts concerning the RAV4, Toyota misrepresented that the RAV4's fuel tank capacity was 14.5 gallons and that the RAV4s mileage range was 580 miles and otherwise engaged in activities with a tendency or capacity to deceive.  Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and lease of RAV4s.
>
> Toyota knew about the RAV4's fuel tank capacity and mileage range at the time of sale and lease.  Toyota acquired additional information concerning the RAV4's fuel tank capacity and mileage range after the RAV4s were sold and leased but continued to conceal information until the defect was revealed by RAV4 purchasers and lessees."

10 FAC ¶¶ 476–77.

11        First, the parties disagree over the appropriate legal standard.  Toyota argues that to sustain

12 a Chapter 93A claim, the conduct at issue must be sufficient to rise to the level of "coercive" or

13 "extortionate" and that Plaintiffs' claims fail because they do not rise to the level of violating

14 public policy.  Mot. at 17 (quoting *Wagner v. Fed. Home Loan Mortg. Corp.*, 494 F. Supp. 3d 80,

15 88 (D. Mass. 2020), *appeal dismissed*, 2020 WL 9599636 (1st Cir. Dec. 21, 2020)).  Plaintiffs

16 correctly point out, however, that the standard only applies to breach of contract claims and not

17 misleading advertising claims at issue here.  Opp. at 12; *see Zurich Am. Ins. Co. v. Watts Regul.*

18 *Co.*, 796 F. Supp. 2d 240, 244–45 (D. Mass. 2011) (holding that "[i]t is well settled that the mere

19 breach of a contract, without more, does not amount to a [Chapter] 93A violation" and that "to

20 prove a violation of Chapter 93A" the plaintiff must show that defendants' conduct "fell within the

21 penumbra of some established concept of unfairness or was immoral, unethical, oppressive or

22 unscrupulous.") (internal quotation marks omitted).  The cases on which Toyota relies in support

23 of its higher standard are thus distinguishable because they are breach of contract cases.  *See*

24 *Wagner*, 494 F. Supp. at 88 (allegations relate to conduct "in disregard of known contractual

25 arrangements"); *Mechanics Nat. Bank of Worcester v. Killeen*, 377 Mass. 100, 105, 384 N.E.2d

26 1231, 1235 (1979) (same).  Thus, the proper standard for false advertising claims under Chapter

27 93A is whether the false advertising is "unfair or deceptive" as explained below.

28

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1    Second, Plaintiffs contend that the Chapter 93A claims may properly be based on Kahn

2    and Ferraguto's express warranty claims.  *Id.* at 10.  But Plaintiffs cannot rely on the holding of

3    one Massachusetts district court decision which held that "[b]reaches of express and implied

4    warranties constitute a virtual per se violation" of Chapter 93A.  *See Glyptal Inc. v. Engelhard*

5    *Corp.*, 801 F. Supp. 887, 899 (D. Mass. 1992).  The First Circuit has rejected this per se argument

6    and has held that "[w]hile it is true that '[g]enerally, a breach of warranty constitutes a violation of

7    [chapter 93A],' neither the Massachusetts legislature nor the Supreme Judicial Court has gone so

8    far as to find that all breaches of warranties are inherently deceptive or unfair."  *Sharp v. Hylas*

9    *Yachts, LLC*, 872 F.3d 31, 52 (1st Cir. 2017) (internal citations omitted).[7]  Instead, only breaches

10   of warranty that are "unfair or deceptive" constitute a violation of Chapter 93A.  *See* Mass. Gen.

11   Laws Ch. 93A § 2.

12   The question then is whether the alleged conduct by Toyota is "unfair or deceptive" under

13   Chapter 93A.  "Massachusetts courts have not set out a precise test for determining when conduct

14   becomes 'unfair or deceptive.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d

15   372, 417 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9,

16   2017).  But Massachusetts courts have looked to factors such as whether the "defendant's actions

17   fell 'within at least the penumbra of some common-law, statutory, or other established concept of

18   unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial

19   injury . . . to competitors or other business[persons].'"  *Boyle v. Int'l Truck And Engine Corp.*, 369

20   F.3d 9, 15 (1st Cir. 2004).  "[A]n advertisement is deceptive when it has the capacity to mislead

21   consumers, acting reasonably under the circumstances, to act differently from the way they

22   otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)."

23   *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 396, 813 N.E.2d 476, 488 (2004).

24   Plaintiffs contend that Toyota's false representation that the Vehicles are capable of

25   holding 14.5 gallons of fuel despite knowledge to the contrary constitutes "unfair or deceptive"

26

27   ─────────────────────
     [7] Toyota also points out that even if it were the case that breaches of warranty were a per se

28   violation, which it is not, Plaintiffs do not allege a breach of warranty in Count 31 for violation of
     Chapter 93A.  Reply at 9.

conduct.  Opp. at 11.  Toyota argues Plaintiffs have failed to allege an identifiable separate harm from the violation itself and thus their claims fail.  Reply at 9.  The First Circuit has held that "the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself."  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 8 (1st Cir. 2017).  "[A] claim that alleges only a 'per se' injury—that is, a claim resting only on a deceptive practice, regulatory noncompliance, or the 'impairment of an abstract right without economic loss'—is insufficient to state a Chapter 93A claim."  *Id.* at 10.

Plaintiffs allege that "they suffered actual damages in the form of the diminished value of the RAV4s and would not have purchased these cars (or would have paid substantially less for them) had Toyota disclosed the defect prior to sale."  Opp. at 12 (citing FAC ¶¶ 19–20).  Plaintiffs rely on *In re Gen. Motors LLC Ignition Switch Litig.*, where the court found that the plaintiffs had "sufficiently allege[d] 'deceptive' conduct to trigger Chapter 93A's protections" because they allege that they "would [not] have paid as much for, or potentially purchased, their vehicles had they known of the defects."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. at 418. Toyota contends that the case is distinguishable because the plaintiffs had "alleged a separate and identifiable harm arising from the alleged violation," *i.e.*, safety malfunctions associated with the alleged defect in the cars.  Reply at 9.  According to Toyota, Plaintiffs fail to identify a separate harm other than loss of economic value in this case.

Toyota is incorrect.  As the First Circuit explained, overpayment alone can be a separate and identifiable harm, so long as the allegations were not "hypothetical or speculative."  *Shaulis*, 865 F.3d at 9 (acknowledging decisions where the Massachusetts Supreme Judicial Court held that plaintiffs "suffered an economic injury because . . . the defendants' products did not deliver the full anticipated and advertised benefits, and therefore were worth less, as used or owned, than what the plaintiffs had paid").

In this case, Plaintiffs allege that they had overpaid for the Vehicles.  FAC ¶¶ 19–20. Accepting Plaintiffs' allegations as true, they adequately plead a separate, identifiable harm that is sufficient to trigger the protections of Chapter 93A.  Toyota's motion to dismiss Kahn and Ferraguto's Chapter 93A claims is **DENIED**.

17

2.       Gentile's Claim Under the Rhode Island Deceptive Trade Practices Act (Count 82)

The RIDTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) [r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "(ix) [a]dvertising goods or services with intent not to sell them as advertised"; "(xiii) [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6). Toyota asserts that Gentile's claim under the Rhode Island Deceptive Trade Practices Act ("RIDTPA") fails because (1) the alleged conduct at issue—the advertising of motor vehicles—is regulated by federal and state regulatory bodies and therefore is "exempt" conduct that cannot form the basis of a RIDTPA claim; (2) Plaintiffs fail to plead causation; and (3) Plaintiffs fail to plead unfair or deceptive conduct by Toyota. Mot. at 18–21.

As for Toyota's contention that the alleged conduct is exempt conduct that cannot form the basis of a RIDTPA claim, Mot. at 18–19, the RIDTPA exemption applies "to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I. Gen. Laws § 6-13.1-4. The Supreme Court of Rhode Island has held that the provision exempts from the RIDTPA's coverage "all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers." *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978). As a specific basis for exemption, R.I. Gen. Laws §§ 31–5.1–1 to –21, Toyota points to "Regulation of Business Practices among Motor Vehicle Manufacturers, Distributors, and Dealers," that regulates motor vehicle manufacturers, distributors, and dealers as the source for exemption. The statute forbids manufacturers from engaging in "any false or misleading advertisement," § 31–5.1–4(c)(5), and is enforced by the Rhode Island Department of Administration enforces the statute. *See In re New Motor Veh. Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 201–02 (D. Me. 2004). Toyota argues that because the statute regulates the advertising of motor vehicles by licensees such as Toyota, the conduct at issue is exempt from the

18

1     purview of the RIDTPA.  Mot. at 19.

2          Plaintiffs contend that the statute only applies to disputes between manufacturers and

3     dealers and does not regulate conduct between manufacturers and purchasers, the issue in this

4     case.  Opp. at 13.  In *Chen v. Subaru of America*, 2008 WL 4176777 (R.I. Super. Aug. 25, 2008), a

5     Rhode Island superior court rejected the RIDTPA exemption argument under the statute that

6     Toyota cites here.  The case concerned allegations by a purchaser that the defendant, Subaru, did

7     not disclose that it had used interchangeable replacement parts during repairs.  *Chen*, 2008 WL

8     4176777.  The court rejected Subaru's argument that it was separately regulated under the same

9     statute at issue here because the code "is only intended to prohibit certain activities by a

10    manufacturer with respect to its dealers" and therefore the alleged deceptive conduct was "not in

11    any way controlled by" the statute.  *Id.*  The court distinguished the case upon which Toyota

12    relies, *In re New Motor Vehicles Canadian Exp. Antitrust Litg.*, 350 F. Supp. 2d 160 (D. Me.

13    2004).  There, the district court applied the exemption even though the plaintiffs were purchasers

14    because the plaintiffs had pleaded a conspiracy between the car manufacturers and their dealers,

15    conduct which was subject to the statute.  *In re New Motor Vehicles*, 350 F. Supp. at 201–02.

16         Toyota responds that the statute was amended on November 9, 2009, after the *Chen* case

17    was decided.  Reply at 10–11.  According to Toyota, the amendment added "new provisions that a

18    manufacturer could violate the law by making false or misleading advertisements in connection

19    with its business as a manufacturer."  *Id.*  But the 2009 amendment did not appear to render any

20    such change.  *See* H.B. No. 6111, Ch. 228 (R.I. Nov. 9, 2008).  The same language related to false

21    or misleading advertisements has been a part of the statute since 2000.  *See* R.I. Gen. Laws §§ 31–

22    5.1–4(c)(3) (2000) ("To resort to or use any false or misleading advertisement in connection with

23    his or her business as a manufacturer, an officer, agent, or other representative thereof.").  Toyota

24    cites no authority that applied this statute to disputes between manufacturers and consumers.

25    Accordingly, Toyota's conduct is not exempt from the RIDTPA.

26         Toyota also argues that Gentile's claim should be dismissed because he fails to plead

27    causation.  Mot. at 20.  In the MTD Order, the Court ordered dismissal of consumer protection

28    claims brought under Arizona, Illinois, Minnesota, Missouri, New Jersey, Nevada, Texas, and

United States District Court
Northern District of California

19

Wisconsin laws "insofar as these statutes equate loss causation with reliance."  MTD Order at 50–51.  The Court had found Toyota's argument persuasive—that Plaintiffs never alleged that they had seen advertisements with affirmative misrepresentations.  *Id.* at 29.

Plaintiffs contend that it is unclear whether the RIDTPA equates loss causation with reliance, but that even if it did, Gentile sufficiently pleads causation.  Opp. at 14–15.  The RIDTPA provides relief for persons who suffer losses "as a result of the use or employment by another person of [an unfair or deceptive act or practice]."  R.I. Gen. Laws § 6-13.1-5.2(a).  Toyota argues that Gentile fails to plead causation because his alleged loss is the "diminished value" of his vehicle and therefore the "cause" of this alleged loss "is not deceptive or unfair conduct based on alleged misrepresentations or omissions, but rather the alleged defect itself."  Mot. at 20.  In the FAC, however, Gentile pleads that had he "known the actual fuel tank capacity and mileage range prior to his purchase, he would either not have purchased the RAV4 or would have paid less for it."  FAC ¶¶ 39, 1109.  The alleged loss, overpayment, is a result of the alleged misrepresentations.  Unlike the dismissed claims in the MTD Order, Gentile adequately pleads reliance; he alleges that he "believed and relied upon Toyota's representations on Toyota's website (www.toyota.com) under the Specifications section of the 2019 Toyota RAV4 Hybrid webpage.  Specifically, on Toyota's specifications webpage, Plaintiff Gentile saw and relied upon Toyota's representations that the RAV4's fuel tank capacity is 14.5 gallons."  FAC ¶ 39.  Gentile sufficiently pleads causation.

Finally, Toyota argues that Gentile fails to plead any "unfair" or "deceptive" trade practices by Toyota sufficient to meet Rule 9(b).  Mot. at 21.  To determine whether a practice is "unfair," courts consider:

> "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

*Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677, 681 (R.I. 2001).  To establish a

1    "deceptive" trade practice, a plaintiff must plead: (1) a representation, omission, or practice, that

2    (2) is likely to mislead consumers acting reasonably under the circumstances and (3) is material to

3    a consumer's choices or conduct.  *Laccinole v. Assad*, 2016 WL 868511, at *8 (D.R.I. Mar. 7,

4    2016).  At the very least, accepting Plaintiffs' allegations as true, they adequately plead

5    "deceptive" trade practices by Toyota.  Gentile alleges that the false representations on which he

6    relied at the time of sale with specificity as well as reliance thereon as discussed above.  These

7    representations were likely to mislead consumers like Gentile, thus causing the injury in the form

8    of overpayment.  Toyota's motion to dismiss Gentile's RIDTPA claim is **DENIED**.

9            3.      <u>Kafeyan's CLRA, FAL, and UCL Claims (Counts 4 and 9)</u>

10        Toyota asserts that Kafeyan's Consumer Legal Remedies Act ("CLRA"), False

11   Advertising Laws ("FAL"), and Unfair Competition Law ("UCL") claims fail to satisfy Rule

12   9(b)'s heightened pleading standard.  The CLRA prohibits "unfair methods of competition and

13   unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or

14   which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770.

15   The FAL prohibits the use of "untrue or misleading" statements in advertising.  Cal. Bus & Prof

16   Code § 17500.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and

17   unfair, deceptive, untrue or misleading advertising."  *Id.* § 17200.  Kafeyan's claims relate to the

18   2021 RAV4 Prime, a different vehicle from the RAV4 Hybrid, to which the other Plaintiffs'

19   claims relate.  FAC ¶ 11.  Toyota asserts that (1) there is no actionable misrepresentation

20   regarding the RAV4 Prime; and (2) Kafeyan fails to plead fraudulent omission or concealment.

21   Mot. at 23–25.  It also argues that Kafeyan's UCL claim fails for additional reasons.  *Id.* at 26.

22        First, Toyota argues that Kafeyan does not identify with sufficient specificity any

23   particular advertisement or untruthful representation by Toyota that he relied on regarding fuel

24   tank capacity.  *Id.* at 23.  Kafeyan alleges that he relied on Toyota's website, owner's manual, and

25   representations on third-party websites unaffiliated with Toyota, which state that the fuel tank

26   capacity of the RAV4 Prime is 14.5 gallons.  FAC ¶ 11.  Toyota points out that this statement is

27   true because the RAV4 Prime does come equipped with a 14.5-gallon fuel tank.  Mot. at 23.

28   Further, it asserts that although Kafeyan alleges that his vehicle "will only accept approximately

10 gallons of fuel when the tank is nearly empty," he does not specify what "nearly empty" means or "how much fuel is left in the tank when he chooses to refuel his vehicle (i.e., is it when the low fuel level warning light goes on or when he has a quarter tank left?)." *Id.* (citing FAC ¶ 11).

Kafeyan sufficiently alleges with specificity the "who, what, when, where, and how of the misconduct charged." Opp. at 24; *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). He pleads with specificity the places that Toyota made the allegedly false and misleading statements, the reasons why the statements were false and misleading (*e.g.*, he has alleged that his tank holds less than 14.5 gallons), that the statements were made at the time of sale and continue to be made today, and that these statements falsely represented the fuel tank capacity and failed to disclose a defect. *See* FAC ¶ 11. Such allegations are enough to give notice to Toyota about "the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Toyota asserts that Kafeyan's consumer protection claims, which are premised on a theory of fraudulent omission and/or concealment, fail because his allegations of pre-sale exclusive knowledge by Toyota and active concealment by Toyota are completely unsupported by factual allegations. Mot. at 24. As established above, Plaintiffs' claims related to active concealment are insufficient. *See supra* Part V.D. As for pre-sale knowledge, Toyota points out that there is no allegation that Toyota had pre-sale knowledge about the RAV4 Prime; all relevant allegations relate only to the RAV4 Hybrid. Mot. at 24. It acknowledges that there is one complaint posted on the NHTSA's website, but one complaint made two months after Kafeyan had purchased the vehicle is insufficient to plausibly allege Toyota's pre-sale knowledge of the alleged defect. *Id.* at 25 (citing FAC ¶ 81). Plaintiffs appear to concede that the allegations are insufficiently pleaded. Opp. at 25. They admit that the allegations "could be more detailed" and request leave to amend to add specific facts related to the RAV4 Prime, *e.g.*, "communications with Toyota where Toyota admitted it was aware of a fuel tank problem with RAV4 Prime" and "supplemental NHTSA complaints." *Id.* n.14. Kafeyan insufficiently pleads in the FAC pre-sale exclusive knowledge and active concealment by Toyota.

United States District Court
Northern District of California

1    Furthermore, Toyota asserts that Kafeyan's theories of fraudulent omission and/or

2    concealment fail because he does not plead a duty to disclose.  Mot. at 25.  Toyota argues that

3    Kafeyan's theories fail under three tests of liability, but Plaintiffs only respond to one of the tests,

4    the *LiMandri* test.  Opp. at 26.  Under the test outlined in *LiMandri v. Judkins*, 52 Cal. App. 4th

5    326, 336 (1997), a duty to disclose may arise when "(1) when the defendant is in a fiduciary

6    relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts

7    not known to the plaintiff; (3) when the defendant actively conceals a material fact from the

8    plaintiff; and (4) when the defendant makes partial representations but also suppresses some

9    material facts."  Plaintiffs argue that Kafeyan adequately pleads facts under the fourth scenario

10   because Toyota had made partial representations and misrepresented the fuel tank capacity of the

11   RAV4 Prime.  Mot. at 26.  Lack of pre-sale knowledge, however, "precludes any plausible

12   supposition that TMS could have 'suppressed' material facts regarding fuel tank capacity."  Reply

13   at 13.  Kafeyan's theories of fraudulent omission and/or concealment therefore fail.

14   Finally, Toyota argues that Kafeyan's UCL claim fails because he does not allege an

15   underlying violation of laws as required by the "unlawful" prong of the UCL and no allegation

16   about misrepresentation or omission could constitute "unfair" practice.  Mot. at 22.  To plead a

17   claim under the "unlawful" prong of the UCL, a plaintiff must adequately plead a predicate legal

18   violation.  *See Lopez v. Wash. Mut. Bank, F.A.*, 302 F.3d 900, 906-07 (9th Cir. 2002).  Under the

19   "unlawful" prong, Plaintiffs allege that Toyota's actions "constitute a 'fraudulent' practice"

20   because its misrepresentations and concealment about the fuel tank capacity and the mileage range

21   likely deceived consumers.  FAC ¶ 222.  They also allege that its "failure to disclose these facts

22   constitutes a material omission in violation of the UCL."  *Id.*  Plaintiffs argue that the "unlawful"

23   prong is satisfied because Kafeyan alleges violations of the FAL, CLRA, and the Song-Beverly

24   Consumer Warranty Act.  Opp. at 26.  But Plaintiffs do not oppose the dismissal of Kafeyan's

25   express warranty and implied warranty claims under the Song-Beverly Consumer Warranty Act.

26   Opp. at 7.  And to the extent that Plaintiffs' FAL and CLRA claims rely on theories of fraudulent

27   omission and/or concealment, those claims also fail to satisfy the "unlawful" prong for the reasons

28   stated above.

United States District Court
Northern District of California

1    As for the "unfair" prong, Plaintiffs contend that they sufficiently plead facts in support of

2  this prong because they allege that Toyota's conduct offends established public policy and is

3  "immoral, unethical, oppressive, unscrupulous, and substantially injurious to Toyota's customers."

4  *See* FAC ¶ 223.  Similar to their claim under the "unlawful" prong of the UCL, they contend that

5  "Toyota could and should have chosen one of many reasonable available alternatives" to its unfair

6  conduct "including disclosing the actual fuel tank capacity and mileage range of the RAV4s to

7  prospective purchasers and lessees."  *Id.*; Opp. at 26.  But this "failure to disclose" argument

8  depends on the fact that Toyota had pre-sale knowledge, which Plaintiffs do not sufficiently allege

9  for the RAV4 Prime.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012)

10  ("the failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.*, a defect of

11  which it is not aware, does not constitute an unfair or fraudulent practice" under the UCL).

12    Plaintiffs also contend, without explanation, that Kafeyan's claims should be plausibly

13  interpreted as "unfair" under the "tethering" test and "balancing" test in *Drum v. San Fernando*

14  *Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010).  *Id.*  Under the "tethering" test, "the public

15  policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the

16  UCL must be tethered to specific constitutional, statutory, or regulatory provisions."  *Id.*  Like in

17  *Drum*, Kafeyan's claim fails because he fails to sufficiently allege any violation of a statutory or

18  regulatory provision, to the extent that it depends on theories of fraudulent omission and/or

19  concealment.  *See id.*  The "balancing" test asks whether the alleged business practice "is immoral,

20  unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court

21  to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

22  victim."  *Id.*

23    Although the "balancing" test does not require "scienter," Plaintiffs' claim under the

24  "unfair" prong is that Toyota failed to disclose the actual fuel tank capacity and mileage range of

25  the RAV4s to prospective purchasers and lessees and therefore pre-sale knowledge is required for

26  their claim to survive.  *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014)

27  (rejecting plaintiffs' claim under the "balancing" test that the defendant intended to mislead

28  California consumers because plaintiffs' arguments "rely on Defendant's alleged 'unified course

24

of fraudulent conduct' as the basis of their claim, and as such, the pleading must satisfy the heightened standard of Rule 9(b)" but the plaintiffs failed to satisfy Rule 9(b)).  Because Plaintiffs have failed to adequately plead that Toyota had pre-sale knowledge of the alleged defect they have failed to plead an adequate claim under the "unfair" prong framed by the FAC.  *See Burdt v. Whirlpool Corp.*, No. 15-CV-01563-JSW, 2015 WL 4647929, at *8 (N.D. Cal. Aug. 5, 2015) (holding that the plaintiff was not able to state a claim under the "unfair business practices" prong of the UCL because the plaintiff failed to explain how the "sale of defective products would constitute unfair business practices in the absence of [d]efendant's knowledge of the alleged defect at the time of sale.") (citing *Wilson*, 668 F.3d at 1145 n.5).

Toyota's motion to dismiss Kafeyan's CLRA, FAL, and UCL claims to the extent that they rely on fraudulent omissions and/or concealment is **GRANTED** with leave to amend.

### 4.    Birchfield's Claim Under the Michigan Consumer Protection Act (Count 34)

Similar to the arguments about the RIDTPA, Toyota asserts that the conduct at issue—the advertising of motor vehicles—is exempt from the Michigan Consumer Protection Act ("MCPA").  The MCPA does not apply to "a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of" Michigan or the United States.  Mich. Comp. Laws § 445.904(1)(a).  A transaction is "specifically authorized" where it is "explicitly sanctioned" by law regardless of "whether the specific misconduct alleged is prohibited."  *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 519–20 (Mich. 2007).  In the MTD Order, the Court held that Toyota had failed to identify any specific law or statutory authority to exempt its conduct from the MCPA.  MTD Order at 49–50.

Here, Toyota points to a separate statute, under which the Secretary of State oversees the licensing and enforcement of motor vehicles.  *See generally* Mich. Comp. Laws §§ 257.249, 257.250.  It highlights three sections of the statute to assert that the statute regulates the conduct at issue.  *See id.* §§ 257.248h(2)(e); 257.249(b)(d).  All three sections begin with the following: "The secretary of state may deny the application of a person for a license as a dealer and refuse to issue the person a license as a dealer, or may suspend or revoke a license already issued, if the secretary of state finds that 1 or more of the following apply."  *Id.*  The first section recites, "(e)

United States District Court
Northern District of California

1    Engaged in a method, act, or practice that is unfair or deceptive, including the making of an untrue

2    statement of a material fact." *Id.* § 257.248h(2)(e).  The second states, "(b) The applicant or

3    licensee has not complied with the provisions of this chapter or a rule promulgated under this

4    chapter." *Id.* § 257.249(b).  And the third recites, "(d) The applicant or licensee has been guilty of

5    a fraudulent act in connection with selling, leasing, or otherwise dealing in vehicles of a type

6    required to be registered under this act." *Id.* § 257.249(d).

7          Plaintiffs assert that these sections do not "specifically authorize" advertising of motor

8    vehicles and therefore Toyota cannot claim an exemption from the MCPA.  Opp. at 18.  "An

9    analysis of whether claims are barred by the exemption requires the identification and careful

10   consideration of the specific statute that purports to authorize the transaction at issue." *In re Gen.*

11   *Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 642–43 (E.D. Mich.

12   2019), *reconsideration denied*, 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019).  Toyota responds

13   that the Michigan Supreme Court "construes this exemption broadly."  Reply at 15.  In *Liss*, the

14   Michigan Supreme Court reviewed decisions by the Court of Appeals to conclude that "the

15   relevant inquiry [to find an exemption to the MCPA] is whether the general transaction is

16   specifically authorized by law, regardless of whether the specific misconduct alleged is

17   prohibited." *Liss*, 732 N.W.2d at 519–20 (internal quotation marks omitted).

18         For example, in *Kraft v. Detroit Ent., L.L.C.*, the court held that the general conduct

19   involved the operation of slot machines and that it was specifically authorized by the Michigan

20   Gaming Control Board ("MGCB") under the Michigan Gaming Control and Revenue Act

21   ("MGCRA"). *See Kraft v. Detroit Ent., L.L.C.*, 261 Mich. App. 534, 542 (2004).  The court found

22   that the MGCRA gave "the MGCB the authority to adopt standards for licensing electronic

23   gambling devices." *Id.*  In *Newton v. West*, the court held that "residential mortgage loan

24   transactions" were exempt from the MCPA because those activities were authorized by the

25   Michigan Savings Bank Act. *Newton v. West*, 262 Mich. App. 434, 438, 686 N.W.2d 491, 493

26   (2004).  The Michigan Savings Bank Act provides that "a savings bank may 'make, sell, purchase,

27   arrange, participate in, invest in, or otherwise deal in loans or extensions of credit for consumer

28   purposes,' including secured liens in real estate." *Id.*

26

In this case, the parties do not dispute that the general conduct at issue is advertising of motor vehicles. The statute on which Toyota relies does not mention advertising. The conduct it regulates, "criteria for the Michigan Secretary of State to consider in denying, suspending, or revoking a dealer's license." Reply at 19. The statute does not "specifically authorize" Toyota's conduct here. Therefore, the representation made to consumers at issue here are not exempted from the MCPA. Toyota's motion to dismiss Birchfield's claim under the MCPA is **DENIED**.

### 5. Colabraro and Klinkhammer's Alleged Failure to Plead Loss Causation (Counts 38 and 56)

The parties dispute whether Colabraro and Klinkhammer fail to allege loss causation under the New Jersey Consumer Fraud Act ("NJCFA") and the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") respectively. In the MTD Order, the Court dismissed these claims because they failed "to allege, with adequate specificity, that Plaintiffs were aware of, and relied on, Toyota's alleged misrepresentations about fuel tank capacity in the company's marketing materials." MTD Order at 51. As explained above, Klinkhammer and Colabraro sufficiently allege awareness and reliance on Toyota's alleged misrepresentations. *See supra* Part V.C. Toyota's motion to dismiss Klinkhammer's MUDTPA claim and Colabraro's NJCFA claim is therefore **DENIED**.

### 6. Klinkhammer's Claim Under the Minnesota Uniform Deceptive Trade Practices Act (Count 38)

Toyota asserts that Klinkhammer does not plead a permissible basis for relief under the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"). Mot. at 29. In the MTD Order, the Court granted Toyota's motion to dismiss this claim because Klinkhammer sought damages and under the MUDTPA, "the sole statutory remedy for deceptive trade practices is injunctive relief." *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1041 (D. Minn. 2013). MTD Order at 53. It held that to the extent Klinkhammer sought other relief, such as injunctive relief, he lacked standing under the MUDTPA because Plaintiffs failed "to allege that they either plan or are likely to purchase another Vehicle." *Id.* at 68.

United States District Court
Northern District of California

1    Toyota asserts that because Klinkhammer only seeks damages again, his claim should be

2    dismissed.  Plaintiffs contend that seeking damages under the MUDTPA is proper because

3    damages are available pursuant to Minnesota's private attorney general statute, Minn. Stat. § 8.31.

4    Opp. at 24.  Courts have allowed claims seeking damages under the MUDTPA pursuant to

5    Minnesota's private attorney general statute, so long as the cause of action benefits the public.  *See*

6    *e.g.*, *Miami Prod. & Chem. Co. v. Olin Corp.*, 2021 WL 2588090, at *9 (W.D.N.Y. June 24, 2021)

7    (holding that "an individual may seek damages under the MUDTPA pursuant to Minnesota's

8    private attorney general statute, Minn. Stat. § 8.31, so long as the 'cause of action benefits the

9    public.'"); *Weller v. Accredited Home Lenders, Inc.*, 2009 WL 928522, at *4 (D. Minn. Mar. 31,

10   2009) (same).  Accepting Plaintiffs' allegations as true, there is a plausible inference of benefit to

11   the public because false advertising and unfair business practices can harm the public.  Opp. at 24

12   (citing FAC ¶¶ 6–42, 119, 569); *see, e.g.*, *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946

13   (D. Minn. 2009) (holding that "the 'public benefit' requirement is not onerous" and that "there is a

14   public benefit in eliminating false or misleading advertising" where "if, but for plaintiff's lawsuit,

15   other 'potential consumers might have been injured in the same manner'"); *Olivares v. PNC Bank*,

16   2011 WL 4860167, at *8 (D. Minn. Oct. 13, 2011) (holding that "claims benefit the public when

17   misleading statements or deceptive trade practice are directed to the 'public at large[]'" and that

18   "courts examine both the form of the alleged misrepresentation and the relief sought by the

19   plaintiff to determine what public interests are at stake."); *but see Buetow v. A.L.S. Enterprises,

20   Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012) (rejecting the plaintiffs' argument that the

21   defendants' "allegedly misleading advertisements were distributed to the public at large" and

22   therefore they satisfy the public-benefit test because the plaintiffs were not seeking injunctive

23   relief and the action "devolved into a series of small claims for nominal damages" which would

24   not "deter 'potential future violators'").  Plaintiffs may amend the FAC and add a claim for

25   Klinkhammer to seek damages under Minnesota's private attorney general statute.

26   Toyota also asserts that Klinkhammer's injunctive relief claim under the MUDTPA would

27   fail even if he had requested it and that he did not request such relief.  In the FAC, however,

28   Klinkhammer seeks "actual damages, attorneys' fees, and any other just and proper relieve [sic]

28

available" under the MUDTPA, as well as punitive damages.  FAC ¶¶ 571–72.  Because

Klinkhammer seeks any just and proper relief under the MUDTPA and injunctive relief is the sole

statutory remedy under the MUDTPA, he has properly requested injunctive relief.

The question then is whether Klinkhammer has standing to assert the injunctive relief

claim.  Toyota contends that because "Klinkhammer is already aware of the alleged defect, he is

unlikely to be 'damaged' by supposedly misleading advertising regarding fuel tank capacity" and

therefore he cannot allege threat of future harm.  Mot. at 29.  As the Court explained in the MTD

Order, however, the Ninth Circuit has held "that a previously deceived consumer may have

standing to seek an injunction against false advertising or labeling, even though the consumer now

knows or suspects that the advertising was false at the time of the original purchase."  *Davidson v.*

*Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  Consumers can plead a cognizable

threat of future harm where they allege, for example, "that [they] will be unable to rely on the

product's advertising or labeling in the future, and so will not purchase the product although [they]

would like to do so," or "that [they] might purchase the product in the future, despite the fact it

was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly,

assume the product was improved."  *Id.* at 970.  The Court acknowledged that Plaintiffs would

likely have standing to seek an injunction against false advertising, if they alleged that they either

"plan or are likely to purchase another vehicle."  MTD Order at 68.

Here, Klinkhammer alleges that he "remains interested in being a Toyota customer and

would consider purchasing or leasing a RAV4 in the future if Toyota provided a vehicle that met

its advertised fuel tank capacity and mileage range."  FAC ¶ 22.  Toyota contends that

Klinkhammer's allegation does not claim a threat of future harm because he only "remains

interested" in purchasing a RAV4 and "would consider" buying one again.  Mot. at 29.  It argues

that *Davidson* is distinguishable because there the plaintiff alleged that she "continues to desire to

purchase" the products and "*would* purchase" them again "if it were possible."  *Davidson*, 889 F.

3d at 970 (emphasis added).  The *Davidson* court recognized that the sufficiency of the plaintiff's

allegation to support standing "is a close question" but held that because it is required to construe

all of the allegations in the plaintiff's favor, the plaintiff had "adequately alleged that she faces an

1    imminent or actual threat of future harm due to [the defendant's] false advertising." *Id.* at 971.  In

2    this case, Klinkhammer's allegations are less affirmative than the plaintiff's allegations in

3    *Davidson* and therefore the question of plausibility is an even closer one.  That Klinkhammer

4    would consider purchasing the vehicle again is not the same as alleging that he plans, desires or is

5    likely to.  It is not sufficiently affirmative.  Klinkhammer thus does not have standing because he

6    cannot allege that he faces an actual threat of future harm due to Toyota's false advertising.

7            Toyota's motion to dismiss Klinkhammer's MUDTPA claim is **GRANTED** as to the

8    claim for injunctive relief against false advertising without leave to amend.  Its motion to dismiss

9    Klinkhammer's MUDTPA claim as to damages is also **GRANTED** but with leave to amend.

10   F.    Standing for Injunctive and Declaratory Relief

11           During the Hearing, Toyota also challenged all of the Plaintiffs' standing for injunctive

12   and declaratory relief against false advertising.  Plaintiffs responded that Toyota had not asserted

13   this argument in its Motion.  That said, the Court had previously granted Plaintiffs the opportunity

14   to amend their injunctive and declaratory relief allegations against false advertising, which would

15   require Toyota to cease and desist from representing that the Vehicles have a fuel-tank capacity of

16   14.5 gallons.  MTD Order at 68.  Like Klinkhammer, all of the Plaintiffs assert that they "remain[]

17   interested in being a Toyota customer and would consider purchasing or leasing a RAV4 in the

18   future." FAC ¶¶ 6–42.  For the same reasons as Klinkhammer, these allegations fail to assert

19   standing for injunctive relief against false advertising.  Because Plaintiffs have once again failed

20   "to allege that they either plan or are likely to purchase another Vehicle, they do not presently

21   have Article III standing to pursue injunctive and declaratory relief as sought in the complaint."

22   *Id.*  Plaintiffs' injunctive and declaratory relief claims requiring Toyota to stop making

23   representations about the Vehicles' fuel tank capacity are **DISMISSED** with leave to amend.

24           Plaintiffs also assert, however, that they have standing to pursue injunctive relief for

25   purposes of seeking to repair their Vehicles.  Opp. at 23.  The Court declined to rule on this issue

26   in the MTD Order but tentatively agreed that they would likely have standing to pursue an

27   injunction seeking to repair the Vehicles if Toyota's ongoing repair efforts prove unsatisfactory.

28   *See* MTD Order at 68.  It distinguished the issue of injunctive relief against an allegedly faulty

United States District Court
Northern District of California

CSP from the injunctive relief claims against false advertising about the vehicle generally. *Id.* Plaintiffs request an opportunity to amend the FAC to request additional injunctive relief contingent on the results of the CSP. Opp. at 23. Because Plaintiffs have failed to adequately allege that the CSP is ineffective, *see infra* Part VII, the Court **DISMISSES** this claim but with leave to amend.

G.      Mootness

Finally, Toyota asserts that all of the Plaintiffs' claims are mooted by the CSP because Plaintiffs have failed to allege an injury entitling them to relief. Mot. at 29–30; Reply at 18. It argues that Plaintiffs cannot allege a plausible injury when nearly all of them do not allege that they availed themselves of the countermeasures, *i.e.*, the CSP, it has developed. Mot. at 3. And for the two Plaintiffs who have participated in the CSP, Toyota asserts that Plaintiffs fail to sufficiently allege that the CSP is ineffective.

The parties dispute whether the CSP provides the full remedy that plaintiffs seek. Toyota argues that Plaintiffs seek the diminished value of their Vehicles due to the alleged fuel tank defect and the CSP would remedy this relief sought because it would provide Plaintiffs with a new fuel tank without the alleged defect, thus mooting the issue of diminished value. Reply at 18. Plaintiffs respond that they not only seek diminished value of their Vehicles but also compensation for their overpayment of the Vehicles. Opp. at 27. They contend that a remedy that does not provide all of the relief they seek cannot moot their claims. *Id.* Because the CSP offers no monetary compensation, they contend that it would not address their claims for damages of overpayment. *Id.*

The cases on which Plaintiffs rely, however, are distinguishable because here, an effective CSP would offer a full remedy including for their claims of overpayment. In *Edwards v. Ford Motor Co.*, 603 F. App'x 538 (9th Cir. 2015), the Ninth Circuit held that the appeal was not moot even though the defendant, Ford, had implemented a repair and reimbursement program, extended the warranty, and offered a refund for owner-paid repairs because the plaintiff sought "relief beyond that provided by the program including reimbursement of the money consumers spent" on the products or on extended warranties. *Edwards*, 603 F. App'x at 539–40. Similarly, in *In re*

*MacBook Keyboard Litigation*, Apple argued that the plaintiffs could not establish standing because its "Keyboard Service Program addresses and remediates the alleged keyboard defect on which all of their claims depend." *In re MacBook Keyboard Litig.*, No. 18-CV-02813-EJD, 2019 WL 6465285, at *6 (N.D. Cal. Dec. 2, 2019). The court held that the program did not moot the plaintiffs' claims because the plaintiffs sought "relief beyond what the Program offers, including monetary damages and injunctive relief." *Id.* Further, the court held that the Plaintiffs' allegations that Apple's repair program was ineffective were plausible because they were based on "Apple's internal documents allegedly acknowledging a design defect and Apple's multiple failed attempts to repair their allegedly defective keyboards in the past." *Id.* at *9.

Unlike the plaintiffs in *Edwards*, if Plaintiffs did not spend any money to fix the alleged defect before participating in the CSP, the CSP would be a sufficient remedy because any overpayment initially paid for Vehicles with alleged defects or diminished value would be compensated by fixing the defect, Plaintiffs have not sufficiently alleged otherwise. And unlike the plaintiffs in *In re MacBook Keyboard Litigation*, the Plaintiffs do not have standing to assert injunctive relief against false advertising and have not alleged any other form of injunctive relief. The only other asserted "ascertainable loss[es]" are "more frequent fueling" and "anticipated future repairs." *See, e.g.*, FAC ¶ 6. But if the CSP is effective, there would be no need for future repairs. And as the Court previously recognized, "more frequent fueling" is not sufficient to assert a plausible claim. *See* MTD Order at 23 (citing *Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (affirming the district court's dismissal of an implied warranty claim where "the alleged defect did not compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range" but merely "required [plaintiffs] to refuel more often"). Since the claim is not about fuel efficiency (MPG), Plaintiffs do not contend that they incurred higher overall fueling costs.

Furthermore, unlike the plaintiffs in *In re MacBook Keyboard Litigation*, Plaintiffs' allegations that the CSP is ineffective is implausible because they have not made sufficient allegations as to is ineffectiveness. For example, one of the two plaintiffs who participated in the CSP, Tran, received a replacement tank that "accept[ed] approximately 13 gallons when nearly

empty." FAC ¶ 14. The other plaintiff, Perry, received a replacement fuel tank that "accept[ed] approximately 10 gallons of fuel when the tank is nearly empty." FAC ¶ 9. Although it is unclear what Plaintiffs mean by "when the tank is nearly empty," Plaintiffs allege that the low fuel level warning light turns on at approximately 2.2 gallons. FAC ¶ 53. Plaintiffs have not sufficiently alleged that the CSP is ineffective because Tran's vehicle accepted approximately the full 14.5 gallons and Perry's vehicle accepted approximately 12.2 gallons after the remedy.

Plaintiffs respond that at least twelve plaintiffs have undertaken the CSP as of the Hearing date and that the fix from the CSP is insufficient because receiving at maximum 12.2 gallons is materially short of the 14.5 gallons represented by Toyota. Even assuming 12.2 gallons is materially short of the 14.5 gallons promised by Toyota, only one out of thirty-nine Plaintiffs, Perry, adequately pleads that the CSP is ineffective. Tran alleges that his vehicle accepted approximately the full 14.5 gallons after the CSP repair and the thirty-seven other Plaintiffs did not participate in the CSP and therefore cannot allege whether or not the CSP is effective. This is insufficient to allege a plausible injury. But because Plaintiffs contend that there are twelve plaintiffs who have also participated in the CSP to date, the Court will allow Plaintiffs to amend their FAC to include these plaintiffs as well as any others who have participated in the CSP. Toyota's motion to dismiss the claims based on failure to allege a plausible injury is **GRANTED** except as to Perry with leave to amend. The Court will then determine which, if any, of the other Plaintiffs' claim are mooted by the CSP.

H.    Administrative Motion to Seal

Plaintiffs filed an administrative motion to seal portions of its opposition to Toyota's motion to dismiss. Docket No. 114. On September 13, 2021, the Court granted the motion without hearing from Toyota. Docket No. 117. On October 28, 2021, after reviewing the motion to seal a second time, the Court ordered Toyota to show cause as to why the information sought to be redacted in Plaintiffs' opposition should stay sealed. Docket No. 119. Toyota does not oppose the un-sealing of the Opposition. Docket No. 120. Plaintiffs' motion, Docket No. 114, is therefore **DENIED** and the Clerk shall **UNSEAL** Docket No. 114-4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

For the reasons above, Toyota's motion to dismiss Plaintiffs' FAC is:

- **GRANTED** as to Plaintiffs' re-alleged claims (without leave to amend).
- **GRANTED** as to Perry, Mulcahy, Kafeyan, and Gentile's NVLW express warranty and implied warranty claims (without leave to amend).
- **GRANTED in part and DENIED in part** as to certain Plaintiffs' express warranty claims.
  - ○ **GRANTED** as to Wagner, Ramaeker, Birchfield, and McPhie's express warranty claims (with leave to amend for Birchfield and McPhie).
  - ○ **DENIED** as to Klinkhammer and Colabraro's express warranty claims.
- **GRANTED** as to Plaintiffs' claims based on active concealment (without leave to amend).
- **GRANTED in part and DENIED in part** as to Plaintiffs' claims under certain state consumer protection statutes.
  - ○ **DENIED** as to Kahn and Ferraguto's Chapter 93A claims, Gentile's RIDTPA claim, Birchfield's MCPA claim, and Colabraro's NJCFA claim.
  - ○ **GRANTED** as to Kafeyan's CLRA, FAL, and UCL claims to the extent that they rely on fraudulent omissions and/or concealment theories (with leave to amend).
  - ○ **GRANTED in part and DENIED in part** as to Klinkhammer's MUDTPA claim (with leave and without leave to amend).

///
///
///
///
///
///
///

1

- **GRANTED** as to Plaintiffs' standing to assert injunctive and declaratory relief against

2

false advertising (with leave to amend).

3

- **GRANTED** as to mootness (with leave to amend), except as to Plaintiff Perry.

4

5

This order disposes of Docket No. 110.

6

7

**IT IS SO ORDERED**.

8

9

Dated: December 10, 2021

10

_____

11

EDWARD M. CHEN
United States District Judge